# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LYNN M. GOULAKOS, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 50216 |
| v. | ) | |
| | ) | Iain D. Johnston |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Lynn M. Goulakos ("Goulakos" or "Claimant") brings this action under 42

U.S.C. § 405(g), seeking reversal or remand of the decision by Respondent Carolyn W. Colvin[1],

Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for

disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). This

matter is before the Court on cross-motions for summary judgment [Dkt. #19, 23].

Claimant argues that the Commissioner's decision denying her application for DIB

should be reversed or remanded for further proceedings because the Administrative Law Judge's

("ALJ") decision is not supported by substantial evidence and is contrary to law. The

Commissioner argues that the ALJ's decision should be affirmed because it is supported by

substantial evidence. For the reasons set forth more fully below, Claimant's motion for summary

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure ("Rule") 25, Carolyn W. Colvin is automatically substituted as the Defendant in this suit. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is required to continue this suit.

judgment [Dkt. # 18] is denied and the Commissioner's motion is granted. The Commissioner's decision is affirmed.

## I. BACKGROUND

### *A. Procedural History*

Claimant filed an application for disability and DIB on March 5, 2007, alleging a disability onset date of November 1, 2006, due to degenerative disc disease of the cervical spine, multiple joint arthritis, and carpal tunnel syndrome. R.12. The SSA denied the application on October 10, 2007, and upon reconsideration on April 7, 2008. R.56, 57. Claimant filed a timely written request for a hearing on April 24, 2008. R.69. The ALJ conducted a hearing on October 9, 2009 in Indianapolis, Indiana. R.18. Claimant and Vocational Expert ("VE") Mark Kelman testified at the hearing. R.30.

On January 11, 2010, the ALJ issued a decision denying the claim for benefits. R.18-24. Claimant filed a timely request to review the ALJ's decision and for leave to submit new and material evidence on February 9, 2010. R.97. The Appeals Council denied review on April 11, 2011, making the ALJ's decision the final decision of the Commissioner. R.5. Claimant subsequently filed this appeal pursuant to 42 U.S.C. § 405(g).

### *B. Hearing Testimony*

#### 1. Lynn M. Goulakos - Claimant

Claimant was fifty-years-old at the time of the hearing. R.33. Based on Claimant's earnings records, she was insured under the Social Security Act through December 31, 2010. R.18. She testified that she is married and has four adult children. *Id.* She graduated from high school and drives weekly. R.34. Claimant last worked in November 2006 as a hostess at a café.

2

R34-35.  As a hostess, Claimant was on her feet all day, walking around and seating people.  *Id*.

She also bused tables and cleaned.  R.35.  That job was too physically demanding, so she quit. *Id*.

Claimant's work history over the past fifteen years included jobs as a billing specialist for

a printer, an assembly administrator for a privately owned company, internet intelligence services

sales, phone customer service; a job scheduler for a carpet company, and a waitress and pantry

stocker.  R.36.  As an assembly administrator, Claimant handled billing records and sales calls.

*Id*.  The customer service job included some accounting.  *Id*.

Claimant testified that her neck problems were the most disabling and that she was on

medication and undergoing physical therapy for that condition.  R.37.  She also has carpal tunnel

syndrome in her hands, but has not had surgery for that condition.  R.37-38.  She feels arthritis in

her hips, knees, arms and shoulders, but doctors have not specified the location of the arthritis.

R.37.  Her doctor also prescribed anti-depressants, Lisinopril for high blood pressure and

Proproxyphene.  R.38,39.  Her insurance company will not cover the prescriptions for Wellbutrin

and Celebrex.  R.39-40.  Claimant thinks that these prescriptions are not covered because her

new insurance carrier considers them to be for pre-existing conditions.  R.43.  Claimant's new

treating physician is Dr. Susan Rychlik. R.38.

Claimant testified that she can climb a flight of stairs, walk two or three city blocks

without needing to rest, stand for approximately an hour before needing to sit, and sit for long

periods of time if she can rest her head back.  R.40.  She can also lift a gallon of milk and laundry

detergent and carry them across a room.  *Id*.  She can bend over to tie her shoes, reach her arms

out, and is not bothered by hot or cold temperatures.  R.41.  However, she loses feeling in her

hands and arms and has difficulty grasping and holdings things.  *Id*.  These conditions get

progressively worse throughout the day. R.44. She wakes up with tingling and numbness in her hands and arms and by the end of the day, they are numb and painful. *Id*. She does not have a problem buttoning clothes or signing her name, but she drops things. R.41, 45. The problems with her hands and arms limit the chores she can do around the house. R.44. Claimant's daughter lives with her and helps with laundry and cleaning. *Id*. Claimant had to give up her painting and crafting hobbies because of the pain in her hands. R.45. She also can not read books because holding them hurts her hands and bending her head down hurts her neck. *Id*. So, she just watches television. *Id*.

If Claimant tries to do chores around the house, the next two days her pain level increases. R.45. Sometimes, the numbness is so bad that she does not know that she has cut her hand until she sees the blood. *Id*. In the week before the hearing, Claimant had dropped a gallon of milk. *Id*. She testified that she drops so many things that she does not pay attention unless they break. *Id*. In the month before the hearing, the farthest Claimant had driven a car was a 15 mile round trip to the grocery store. R.47. However, Claimant can not do the shopping by herself and her daughter needs to go with her. *Id*.

Claimant has not identified any triggers for her neck pain. *Id*. She assumes that the pain is caused by the weight of her head. R.42. To relieve the pain, she lies down, sits back in a chair, or takes some medication. R.42. Because of her depression, Claimant starts crying all the time and is irritable. *Id*.

### 2. VE - Mark Kelman

The VE testified that Claimant's past relevant work as a hostess/trainer would be considered light exertion and at the low end of semi-skilled work. R.49. The specific vocational

preparation ("SVP") for the hostess/trainer position is three. *Id*. Claimant's past job as a billing clerk was sedentary and semi-skilled with a SVP of four. *Id*. Claimant's past work as an administrative assistant was sedentary and skilled. *Id*. Her job doing sales calls and appointment-setter work was sedentary and at the low end of semi-skilled, with a SVP of three. *Id*. Her job as an accounting/billing clerk was sedentary and between the high end of semi-skilled to the low end of skilled, with a SVP of four or five. R.50. Her job as a coat checker was light and unskilled. *Id*. The VE did not have any opinion regarding Claimant's prior part-time job. *Id*.

Assuming Claimant's testimony at the hearing was true, the VE opined that she would not be able to perform her past work and her stated limitations would preclude all other work. *Id*. The ALJ posed the following hypothetical to the ALJ. R.52. First, the hypothetical claimant who does not have any limitations of sitting, hearing, seeing, speaking, stooping, crouching, crawling, or climbing. *Id*. Second, the hypothetical claimant also does not have difficulty standing or walking, and does not require any environmental restrictions or assistive devices. *Id*. Third, the hypothetical claimant has a history of degenerative disc disease of the cervical spine, including cervical stenosis at C6 and C7, and pain creates some difficulty for her. *Id*. Fourth, the hypothetical claimant also has difficulties doing overhead work, repetitive fingering, grasping and reaching due to what appears to be carpal tunnel syndrome. R.52, 53.

The VE opined that the hypothetical person would be able to perform all of Claimant's past relevant work. R.53. He also testified that an employee of Claimant's skill level would likely be subject to potential termination if she had a pattern of missing one to two days of work per month on a regular or ongoing basis. *Id*.

## C. *Medical Evidence*

On February 16, 2004, Claimant reported severe neck pain, headaches, bilateral arm pain and hand numbness. R.98. Her range of neck motion was severely limited and a computerized muscle test showed significant cervical muscle weakness. *Id*. An April 30, 2004 ultrasound of the cervical spine showed "abnormalities [that] can cause pain, weakness, and parestheisa." R.189. A nerve conduction study showed damage to the left ulnar median motor nerves and median sensory nerves. R.198. The study also revealed abnormalities in C5-C8 and showed severe edema and fasciitis in her C3-C7 bilateral paraspinal muscles. *Id*. The interpreting neurologist stated that the abnormalities were consistent with bilateral left and right carpal tunnel syndrome and bilateral median sensory neuropathy, which can cause pain, parestheisa, and bilateral elbow to hand weakness. R.191. Claimant was referred for two or three months of chiropractic care. *Id*.

After physical therapy and chiropractic appointments did not provide Claimant with her desired relief, she received an epidural steroid injection in April 2005 to treat her cervical spinal stenosis and cervical degenerative disc disease. R.216. In May 2005, after two injections, Claimant reported that her hand pain and numbness had disappeared. R.215.

A June 2006 MRI showed disc desiccation in multiple levels, but most pronounced in C5-7. R.225. It also showed prominent disc osteophyte complex in C5-6 with mild uncovertebral hypertrophy and mild right-sided neural foraminal stenosis, and narrowing of the left lateral recess. *Id*. In June 2006, Claimant complained of pain in both arms and thumbs and severe aching in her neck. R.233. Claimant was advised that she was not a surgical candidate and that she should continue steroid injections to reduce her neck and arm pain. *Id*.

In March 2007, Claimant saw Dr. Anthony Lee ("Lee"). R.284. Claimant complained of arm pain and neck pain that was constant, deep, sharp, and caused burning and numbness. *Id*. On March 14, 2007, Dr. Lee prescribed 200 mg of Celebrex per day and administered a steroid injection. R.286. He administered a second injection on March 23, 2007. R.298. At an April 16, 2007 follow-up appointment, Claimant complained of continued pain and said that the injections only provided 6 days of significant relief. R.240. Claimant received another steroid injection on May 11, 2007. R.296.

In June 2007, Claimant underwent an EMG of her upper left extremity. R.282. The EMG showed evidence of mild left carpal tunnel syndrome/media neuropathy and some evidence of cervical nerve root irritation. *Id*. Dr. Lee recommended physical therapy for Claimant's cervical spine and continued use of Celebrex. *Id*. In an August 29, 2007 follow-up with Dr. Lee, Claimant reported that physical therapy did not provide any significant relief for her continuing pain. R.280. Dr. Lee recommended medial nerve blocks in C4, C5 and C6 in November 2007. R.294.

On October 1, 2007, Dr. Elizabeth Ottney performed a state agency examination of Claimant. R.259. Dr. Ottney opined that Claimant may have difficulties with overhead work as well as repetitive fingering, grasping, and reaching. *Id*. The upper and lower extremity examination revealed no atrophy and her range of motion in all major joints was normal. *Id*.

On October 9, 2007, John B. Kurtin performed a physical RFC assessment of Claimant. R.252-53. Kurtin found that she was capable of light work with unlimited pushing/pulling, occasional climbing ladders, ropes and scaffolds, with limited reaching, limited fine and gross manipulation, and no exposure to hazards or moving machinery. *Id*.

The November 2007 nerve blocks reduced Claimant's pain from an eight to a five on a ten point scale.  R. 276.  Claimant received another nerve block in December 2007.  However, because those nerve blocks did not provide Claimant the relief she was seeking, in January 2008, Dr. Lee performed medial branch nerve radiofrequency ablation in C4-C6.  R.269.  In December 2008, Claimant received steroid injections in both wrists and reported significant relief in numbness and pain in her left wrist.  R.310.

In March 2009, Dr. Lee opined that, during an 8-hour-day, Claimant could use both hands to grasp, turn and twist objects 75% of the time.  R.320.  She could use fingers on both hands for fine manipulations 50% of the time, and she could reach with both arms, including overhead, 75% of the time.  *Id*.

### D. The ALJ's Decision - August 20, 2010

Following the October 9, 2009 hearing and a review of the medical evidence, the ALJ found that Claimant was not disabled under the Social Security Act.  R.24.  In making this determination, the ALJ analyzed Claimant's application under the required five-step sequential analysis.  R. 20-24.  At step one, the ALJ found that Claimant had not engaged in substantial gainful activity at any time material to the decision.  R.20.  At step two, the ALJ determined that the medical evidence established that Claimant had the following medically severe impairments: degenerative disc disease of the cervical spine, multiple joint arthritis, and carpal tunnel syndrome.  *Id*.

At step three, the ALJ concluded that, even in combination, Claimant's impairments did not meet or medically equal the criteria of any listing in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id*.  At step four, the ALJ determined that Claimant had the residual

functional capacity ("RFC") to perform a wide range of light work with certain limitations, and that she could perform her past relevant work as a hostess/trainer, billing clerk, sales assistant, account specialist, receptionist and coat checker as those jobs are actually and generally performed. R.21-23. Specifically, the ALJ found that Claimant's RFC included light work with "sitting, standing and walking up to 6 hours a day, lifting and carrying [up] to 10 pounds frequently and 20 pounds occasionally, unlimited pushing and pulling, frequent postural functioning, occasional fine and gross manipulation and occasional reaching, including overhead, unlimited feeling, and no concentrated exposure to hazardous heights and moving machinery." R.21. Because the ALJ found Claimant capable of performing her past relevant work, he did not make a step five finding and concluded that Claimant was not disabled under the Social Security Act and therefore denied her application for disability insurance benefits. R.24.

### E. Additional Evidence

After the ALJ issued his decision, Claimant filed an appeal and submitted additional evidence to the Appeals Council. That evidence included a March 21, 2011 letter from Claimant's treating physician, Dr. Rychlik, and medical records from the Rockford Spine Center, dated February 25, 2010 through June 18, 2010. All of the additional evidence post-dated the ALJ's January 11, 2010 decision.

### II. LEGAL STANDARD

#### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v.*

*Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Schoenfeld v. Apfel,* 237 F.3d 788, 792 (7th Cir. 2001).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, the reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). As long as, in light of all of the evidence, reasonable minds could differ concerning whether the claimant is disabled, the ALJ's decision denying benefits must be affirmed. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The reviewing court may enter a judgment

"affirming, modifying, or reversing the decision of the [Commissioner], with or without

remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## B. Disability Standard

Disability insurance benefits are available to a claimant who can establish she is under a

"disability" as defined in the Social Security Act.  *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th

Cir. 2009).  "Disability" means an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected . . .

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An

individual is under a disability if she is unable to do her previous work and cannot, considering

her age, education, and work experience, partake in any gainful employment that exists in the

national economy.  42 U.S.C. § 423(d)(2)(A).  Gainful employment is defined as "the kind of

work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. §

404.1572(b).

The ALJ used a five-step sequential analysis in evaluating whether a claimant is disabled.

20 C.F.R. § 404.1520(a)(4)(I-v).  Under this process, the ALJ must inquire, in the following

order:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant can perform past relevant work; and (5) whether the

claimant is capable of performing other work.  *Id*.  Once the claimant has proven she cannot

continue her past relevant work due to physical limitations, the burden shifts to the government

to show that other jobs exist in the economy that the claimant can perform.  *Pepper v. Colvin*,

712 F.3d 351, 361 (7th Cir. 2013).

# III. DISCUSSION

## A. Appeals Council's Denial of Claimant's Request to Review

Claimant argues that the Appeals Council erred in failing to remand her case in light of the new evidence she presented. The Commissioner argues that because the Appeals Council's decision is not based on a mistake of law, it is not reviewable by this Court. The Appeals Council's review of cases is governed by 20 C.F.R. § 404.970, and in the absence of an error in law, the Council's decision whether to review is discretionary and unreviewable. *Damato v. Sullivan*, 945 F.2d 928, 988 (7th Cir. 1992). The Court considers whether the Appeals Council made an error of law *de novo*. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012).

Section 404.970 requires that when a claimant provides additional information to the Appeals Council, the Council must first assure itself that the proffered new material relates to the appropriate time period. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). Then, it must determine whether the evidence is really "new" and "material." *Id*. If the evidence is new and material, then the Appeals Council must evaluate the entire record including the new evidence. *Id*. If the Council determines, as a result of that evaluation, that the ALJ's actions appear to be contrary to the weight of the evidence, then the Council will proceed to a full review of the case. *Id*.

In the letter from the Appeals Council denying review in this case, the Council stated that it "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." R.5-6. The Seventh Circuit considered identical language in *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). It

interpreted that language as a finding by the Appeals Council that the additional evidence was not new and material and, therefore, non-qualifying under § 404.970.

The additional evidence at issue in this case is a March 21, 2011 letter from Claimant's treating physician, Dr. Rychlik, and medical records from the Rockford Spine Center, dated February 25, 2010 through June 18, 2010. "Evidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). "[N]ew evidence is material only if it is relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt*, 395 F.3d at 742 (quoting *Kapustra v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

Dr. Rychlik's March 21, 2011 letter is not material because it appears to discuss Claimant's condition as of March 21, 2011, more than a year after the ALJ issued his decision. The medical records from the Rockford Spine Center are a closer call. Those records begin on February 25, 2010, more than a month after the ALJ issued his decision, and continue through June 2010. Accordingly, the issue is whether those records relate "to the period on or before the date of the [ALJ] hearing decision." *Farrell*, 692 F.3d at 771 (quoting 20 C.F.R. § 404.970(b)).

The Commissioner did not address this issue in her brief because she incorrectly argued that the issue of materiality was moot because the Appeals Council's decision was discretionary and not reviewable. *Def. Br.* at 4. Claimant argues that the medical records are material because

13

evidence that she underwent complicated neck surgery a little over two months after the ALJ issued his decision, contradicts the ALJ's finding that her treatment was only conservative. Claimant further argues that her willingness to undergo complicated neck surgery so soon after the ALJ's decision bolsters her testimony at the hearing regarding the severity of her symptoms and limitations.

The additional evidence shows that on March 17, 2010, Claimant underwent circumferential cervical reconstruction, requiring the insertion of cages, bone grafts, and screws at C4-C7. Those medical records also include treatment notes from February 25, 2010, indicating that conservative therapies to address Claimant's arm, hand, and neck pain had failed for many years. Critically, however, those treatment notes do not document Claimant's condition at the time of the October 2009 hearing, or even at the time the ALJ issued his decision. Further, contrary to Claimant's argument, the fact that she had neck surgery in March 2010 cannot contradict the ALJ's statements that the management of her symptoms had been conservative through January 2010. Accordingly, the Court finds that the Appeals Council did not commit legal error by rejecting the March 21, 2011 letter and the medical records from the Rockford Spine Center.

## B. Credibility

Because the ALJ is in the best position to observe witnesses, an ALJ's credibility finding will not be overturned as long as it has some support in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1178-1179 (7th Cir. 2001). Although the ALJ is not required to explain every factor in making a credibility determination, his opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and reasons for the weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003).

The ALJ did not find Claimant's testimony credible, because as the VE confirmed, if the ALJ had, he would have found her unable to work and would have awarded her the requested benefits. Specifically, the ALJ found that Claimant's good work history demonstrated motivation and bolstered her credibility. R.21-22. However, he also found that the greater objective medical indications and laboratory findings of record failed to support her alleged disability. R.22. The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with her RFC. R.22.

In support of his credibility finding, the ALJ noted that Claimant had only required conservative management of her symptoms, which suggested that the symptoms were less restrictive than alleged. *Id*. He also noted that she was not a surgical candidate in June 2006. *Id*. The ALJ also referenced Claimant's medications and daily activities, although he did not analyze them. R.21. The ALJ considered Dr. Ottney's observation that Claimant did not have any upper extremity atrophy and that her grip strength was 5/5. R.22. He found Claimant's allegations of upper extremity weakness inconsistent with those medical findings. *Id*.

SSR 96-7p provides that an ALJ must consider certain factors when evaluating credibility. As stated above, the ALJ did consider the 96-7p factors, which include treatment history, daily activities, symptoms, and medication. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir.

2009). Although the ALJ may not have provided as much analysis as Claimant, or Respondent would have liked,[2] and his credibility determination was not flawless, it also was not patently wrong. *See Simila*, 573 F.3d at 517.

## C. The ALJ Did Not Impermissibly Play Doctor

Claimant's argument that the ALJ impermissibly played doctor is also unpersuasive. Claimant argues that the ALJ erred in three ways. First, she claims that he erred in stating that the 2007 EMG findings were "consistent with less than marked upper extremity limitations." Claimant also takes issue with the ALJ's discussion of Dr. Ottney's examination and his conclusion that an upper extremity examination that revealed no atrophy, did not support Claimant's allegation of diminished use of her arms and hands. Finally, Claimant objects to the ALJ's analysis of Dr. Lee's opinion as to her reaching ability, and gross and fine motor manipulation limitations.

Contrary to Claimant's arguments, these statements were not independent medical findings by the ALJ. Theses were appropriate and required attempts by the ALJ to weigh the evidence and make inferences from the record. *See Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010); *see also Back v. Barnhart*, 63 Fed.Appx. 254, 259 (7th Cir. 2003). The Court recognizes that case law states that the ALJ is not to "play doctor." But the Court also recognizes that the ALJ must build a logical bridge in his analysis. *See Pepper*, 712 F.3d at 367 (rejecting argument that ALJ was "playing doctor"). As stated above, the ALJ adopted an RFC that included, among other things, a limitation of "occasional fine and gross manipulation and

---

[2] In her response brief, Respondent impermissibly attempted to bolster the ALJ's credibility determination with additional facts, which this Court will not consider. *See Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010).

occasional reaching, including overhead." There is substantial evidence in the record to support this limitation and it does not conflict with Dr. Lee's opinion or Dr. Ottney's examination. Accordingly, this Court will not disturb that finding. *See Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008).

Dr. Lee opined that, during an 8-hour-day, Claimant could use both hands to grasp, turn and twist objects 75% of the time. R.320. She could use fingers on both hands for fine manipulations 50% of the time, and she could reach with both arms, including overhead, 75% of the time. *Id*. Dr. Ottney noted that Claimant may have "some difficulties" doing "overhead work" as well as "repetitive fingering, grasping, and reaching." The ALJ's limitation of occasional fine and gross manipulation and occasional reaching, including overhead, is consistent with, and possibly more conservative than, the limitations suggested by Dr. Lee and Dr. Ottney. The ALJ's statements do not suggest that he was "playing doctor." Instead, he was building the required logical bridge to support his findings.

## D. The ALJ Did Not Err in Finding that Claimant Could Perform Her Past Relevant Work Based on the VE's Testimony

In his RFC determination, the ALJ found that Claimant was limited to occasional fine and gross manipulation and occasional reaching, including overhead. The VE testified that with those limitations, Claimant could still perform her past work as a hostess/trainer, billing clerk, sales assistant, account specialist, receptionist, and coat checker. The ALJ adopted the VE's opinion and found Claimant capable of performing her past relevant work. Claimant argues that this constituted reversible error because according to the Dictionary of Occupational Titles, her past work required either frequent or constant reaching and handling. Because she is limited to

only occasional reaching and handling, Claimant argues that she lacks the requisite RFC to perform her past work.  Tellingly, Claimant failed to include any case law citations in support of this argument.

The ALJ is entitled to rely on a VE's testimony even if it contradicts a description in the Dictionary of Occupational Titles.  *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000).  This is especially true when the VE's testimony reflects the work as it was actually performed by Claimant.  *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).  In this case, VE Kelman listened to Claimant's testimony about her past work and concluded that she could perform that work with a RFC that included being limited to occasional fine and gross manipulation and occasional reaching, including overhead.  The ALJ did not err in adopting the VE's opinion and finding Claimant capable of her past work.

## IV. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.  The ALJ's decision is supported by substantial evidence and is affirmed.

It is so ordered.

Date: July 12, 2013                    By:_____
                                              Iain D. Johnston
                                              U.S. Magistrate Judge